IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GILBERT GUZMAN,

    Plaintiff,

v.

NEW MEXICO STATE DEPARTMENT
OF CULTURAL AFFAIRS, and
CITY OF SANTA FE,

    Defendants.

No. 1:21-cv-00198-KWR-JFR

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (**Doc. 2**). Plaintiff painted the Multicultural mural on an exterior wall of the Halpin building in Santa Fe, New Mexico. Plaintiff requests that the Court issue a preliminary injunction stopping Defendant from renovating the Halpin building or destroying a mural on an exterior wall of the Halpin building. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's motion is not well-taken and, therefore, is **DENIED.**

### BACKGROUND

Plaintiff is a nationally recognized artist who has painted murals in numerous places, including the New Mexico state library, the Bataan Memorial Building, and the New Mexico Roundhouse. In 1980, Plaintiff painted an original mural titled "Multicultural" on an exterior wall of the Halpin building, located at 404 Montezuma St. in Santa Fe, New Mexico. **Doc. 1 at ¶ 7.** The Halpin building was a state records archive. Defendant New Mexico State Department of

Cultural Affairs is the current owner of the building and operates the state's museums.[1] **Doc. 17 at 3.** The Defendant is currently in the process of renovating the Halpin building into the Vladem Contemporary Art Museum. **Doc. 1 at ¶ 16.** The Defendant began construction on or around February 1, 2021. Plaintiff filed this case after construction began.

Plaintiff and the owner of the Halpin Building at the time, the Property Control Division, entered into a "Mural Agreement" on May 12, 1980. **Doc. 1-2 at 1.** The parties agreed that a mural would be painted on the exterior east wall of the Halpin building. *Id.* The parties also agreed that "the Property Owner expresses its intent not to alter or paint over the mural during its normal life, but property owner acquires and retains all ownership rights in the mural on its completion." *Id.* Moreover, the Property Owner agreed "to allow muralist access to the mural so that muralist may maintain said mural for its natural life." *Id.*

The 40-year-old mural was painted directly on stucco. The New Mexico Department of Cultural Affairs commissioned a conservation study by Cynthia Lawrence. **Doc. 16-4.**

Plaintiff asserts the following claims in his complaint:

Count I: Breach of Contract against all Defendants

Count II: Violation of VARA against all Defendants.

Defendant presented the affidavit of Nick Schiavo, Deputy Cabinet Secretary of the New Mexico Department of Cultural Affairs. It provided as follows: "the following work at the construction site will begin: the demolition of the interior of the building. In order for this work to safely proceed, the exterior walls must be properly shored. The shoring will require large metal plates to be bolted on both sides of the wall that the mural is painted on. The installation of those

---

[1] Although the City of Santa Fe is also a defendant in this case, it is apparently not an owner of the building. The City of Santa Fe did not file a response to the motion. When the Court refers to "Defendant" in this opinion, it refers to the New Mexico Department of Cultural Affairs.

bolts will require penetrations through the wall." **Doc. 17-5 at 2.** "Given the physical condition of the mural, once the impactful work begins it is likely that construction related vibrations within the structure will cause pieces of the Mural painted on the stucco of the wall to dislodge from the wall and fall to the ground." **Doc. 17-5 at 2.**

The motion for preliminary injunction is fully briefed. In order to give the parties a timely answer, the Court will address the motion for preliminary injunction although there are two pending motions to dismiss which have not been fully briefed.

Plaintiff filed a notice requesting a hearing on the temporary restraining order, apparently *ex-parte*. **Doc. 3.** The Court denied the request for an *ex-parte* hearing and ordered Plaintiff to give Defendants notice. **Doc. 4.**

Neither party asserted in their briefing that they would present additional evidence at a hearing, or that additional facts or testimony needs to be presented as to this motion. Because neither party has shown why an evidentiary hearing is necessary, the Court finds it can rule on the papers and declines to hold a hearing. *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir. 1998) ("[Plaintiff] has failed to cite any Tenth Circuit authority that requires a district court to hold an evidentiary hearing prior to granting or denying a preliminary injunction motion."); *see also Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014).

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and

3

unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne,* 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted).

To obtain a preliminary injunction, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

## DISCUSSION

Plaintiff seeks a broad preliminary injunction "preventing demolition, destruction, or otherwise modification of the [Halpin] building and Mural." **Doc. 2 at 10.** He primarily seeks an injunction pursuant to his claims under the federal Visual Artists Rights Act of 1990 ("VARA"). As relevant here, VARA grants visual artists under certain circumstances the right:

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
> (B) to prevent any destruction of a work of recognized stature and any intentional or grossly negligent destruction of that work is a violation of that right....

17 U.S.C. § 106A(a)(3). VARA had an effective date of June 1, 1991. VARA protects the "moral rights" of certain visual artists. *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003) (internal quotation marks). "[M]oral rights afford protection for the author's personal, non-economic interests in receiving attribution for her work, and in preserving the work in the form in which it was created…." *Id.*

**I.      Irreparable harm factor.**

4

Initially, Plaintiff's motion fails because he failed to show irreparable harm in the absence of a preliminary injunction. To obtain a preliminary injunction, a movant "must establish ... that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered. Demonstrating irreparable harm is not an easy burden to fulfill." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (internal citations and quotation marks omitted).

"[P]laintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (internal quotation omitted). Harm must not be speculative, rather Plaintiff bears the burden of showing a significant risk of harm. *Id.* That harm "must be both certain and great," not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001), *quoted in State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021).

The only evidence in the record reflects that the mural has reached the end of its natural life. **Doc. 16-4.** Defendant presented the affidavit of Debra Garcia y Griego describing why the mural has reached the end of its natural life. *Id.* The affidavit includes a Conservation Assessment by Cynthia Lawrence, which was commissioned by Defendant. *See* **Doc. 16-4 at 7-13.** As described in the affidavit and Conservation Assessment, the mural is forty years old when the average life span of a mural is ten to twenty years. The mural is painted directly on stucco. The

images have significantly faded and the stucco is unstable and cracked.  Pieces of the mural have fallen off the wall.  **Doc. 16-4.**

The Conservation Assessment noted that the mural "is in poor condition, with evidence of numerous areas of instability (and risk of continued loss of image layers), as well as an apparent significant fading and current loss of image layers."  **Doc. 16-4 at 9.**  It also noted that "expected lifetime can be a finite determination, made by many public art advocates, owners, and municipalities.  Many public art programs, from the start, consider murals to be temporary, with a lifetime of approximately 10 or 20 years (though some murals have lasted in relatively good condition for well over 20 years)."  *Id.*  The Conservation Assessment also detailed the poor condition of the mural.  *See* **Doc. 16-4 at 8 to 9.**

Based on the Conservation Assessment, Ms. Garcia y Griego wrote in her affidavit:

> On the basis of my experience with exterior murals in the harsh Santa Fe environment, my review and understanding of the Conservation Assessment, and my personal inspection and review of the Mural, it was and is clear to me that the Mural is at the end of its natural life, and that because of its fragility and danger, it was not prudent or practical to conserve or move the mural.  Having made this assessment, the Department undertook to work with the Plaintiff to find a pathway to honoring and remembering the Mural through documenting its history and existence, and to explore engaging the Plaintiff to create new mural panels that could be displayed within the Contemporary Museum once built.

**Doc. 16-4 at 6.**  The Court considers this affidavit and conservation assessment as the only evidence in the record, besides attorney argument, on the natural life of the mural.  The Court finds this evidence persuasive.  Because of the condition of the mural as reflected in the undisputed record, the Court cannot say that Plaintiff would suffer irreparable harm unless a preliminary injunction was issued.

Plaintiff does not argue that the mural can remain as-is but seeks to paint a new or renovated mural in its place.  *See* **Doc. 19 at 2 ¶¶ 2, 3, 7** ("I have offered to redo the mural").  Plaintiff does not submit anything in the record to suggest that the mural has not reached the end of its natural

life. Rather, Plaintiff argues that the condition of the mural is Defendant's fault because it did not allow him to renovate or repair the mural. Therefore, the Court is not inclined to find irreparable harm if the mural as it is now is altered or destroyed because Plaintiff would like to alter it anyway.

Moreover, it is not clear compensatory relief would be inadequate. Under the VARA statutory scheme, Congress created a "moral right" to prevent the alteration or destruction of visual art, and provided for statutory damages to compensate the violation of that right.

Defendant has articulated plans to exhibit the mural in the museum in other forms. *See* **Doc. 16-4;** *Cohen v. G & M Realty L.P.*, 988 F. Supp. 2d 212, 227 (E.D.N.Y. 2013) (discussing irreparable harm and noting that painting would exist in other forms).

Finally, Plaintiff did not file this case until after construction on the Halpin building had already started.

Because the Court finds that Plaintiff has failed to show irreparable harm, Plaintiff's motion for preliminary injunction necessary fails. *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Nevertheless, as explained below, Plaintiff does not succeed on the remaining preliminary injunction factors.

**II.      Plaintiff did not establish a substantial likelihood of success on the merits.**

Alternatively, even if Plaintiff established irreparable harm, he failed to establish a substantial likelihood of success on the merits.

Under this factor, Plaintiff need only show a substantial likelihood of success on the merits and "need not show a certainty of winning." *Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin.*, 843 F.3d 886, 901 (10th Cir. 2016), *cited in DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1273 (10th Cir. 2018). Generally, Plaintiff bears the burden to show a substantial likelihood of success on the merits, but "the burdens at the preliminary injunction stage

track the burdens at trial." *Harmon v. City of Norman, Oklahoma*, 981 F.3d 1141, 1147 (10th Cir. 2020).

### A. Plaintiff did not show he was likely to prevail under the Visuals Artists Rights Act ("VARA") (Count II).

VARA provides in relevant part:

> **(2)** With respect to works of visual art created before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, but title to which has not, as of such effective date, been transferred from the author, the rights conferred by subsection (a) shall be coextensive with, and shall expire at the same time as, the rights conferred by section 106.

17 U.S.C. § 106A(d).  Courts have interpreted this provision to mean that "[w]orks of visual art created before the effective date" of VARA are protected if "title has not, as of such effective date, been transferred from the author." *Pavia v. 1120 Ave. of the Americas Assocs.*, 901 F. Supp. 620, 628 (S.D.N.Y. 1995); *see also Martin v. City of Indianapolis*, 982 F. Supp. 625, 638 (S.D. Ind. 1997), *aff'd*, 192 F.3d 608 (7th Cir. 1999).  The effective date of VARA was June 1, 1991.

Here, the 1980 Agreement is clear that all ownership rights transferred from Plaintiff and the other artists to the property owner at the completion of the mural.  *See* **Doc. 16-2 at 1** ("… property owner acquires and retains all ownership rights in the mural on its completion.").   The 1980 Agreement also provided that "property owner agrees to allow muralist access to the mural so that muralist may maintain said mural for its natural life."  *Id.*  Although Plaintiff retained the right to maintain the mural, the Court does not believe that means he kept *title* to the work as contemplated in the statute.  "All ownership rights" were transferred to the property owner. Plaintiff does not argue that any other agreement is controlling and does not provide the terms of any other agreement. *See* **Doc. 1** (only mentioning 1980 Agreement).

Alternatively, the plain language of 17 U.S.C. § 113(d)(1) provides that Plaintiff has no statutory right under VARA to stop the renovation of the Halpin building or the alteration or

8

destruction of the mural.  Section 113(d)(1) provides that a visual artist's rights under section 106A(a)(2) and (3) to prevent destruction or alteration of visual art do not apply if:

> **(A)** a work of visual art has been incorporated in or made part of a building in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), and
> **(B)** the author consented to the installation of the work in the building either before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, or in a written instrument executed on or after such effective date that is signed by the owner of the building and the author and that specifies that installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal,

17 U.S.C. § 113(d)(1).  As to section 113(d)(1)(A), Defendant submitted affidavits explaining that that the forty year old mural, painted on a layer of stucco on the exterior wall of the Halpin building, cannot be removed from the building without altering distorting, or destroying it.  **Doc. 16-4.**  Defendant also submitted a conservation assessment, which does not state that the mural could be removed from the wall without distorting or altering it.  **Doc. 16-4.**  Plaintiff points to nothing in the record to suggest that the mural, painted on a layer of stucco on the exterior wall of the Halpin Building, can be removed from the building without altering, distorting, or destroying it.  Moreover, Plaintiff does not appear to even argue that the mural can be removed.  *See* **Doc. 19 at 9** (Plaintiff taking the position that "by Defendant's own admission, there is no way to remove the Mural to preserve it.").  Therefore, it is not likely that the mural could be removed from the building without altering or distorting it.

As to section 113(d)(1)(B), the record reflects that Plaintiff consented to the installation of the work in the 1980 Agreement, which was entered into before the effective date of VARA.  The 1980 Agreement is the only agreement in the record governing the mural.  It is undisputed the work was created prior to June 1, 1991, the effective date of VARA.

9

Therefore, under the plain language of § 113(d)(1), Plaintiff has no right under VARA to prevent the alteration, distortion, or destruction of the mural.

### B.     Plaintiff's arguments are unavailing.

Plaintiff nevertheless argues in a reply brief that he has rights under VARA because (1) the mural was "redone" in 1993 after the effective date of VARA, and (2) he entered into another agreement with the property owner in 1993. As explained below, Plaintiff's arguments fail because there is nothing in the record supporting them and they are directly contrary to his statements and admissions.

Plaintiff argues he entered into another agreement in 1993.  However, Plaintiff relied solely upon the written 1980 Agreement in his complaint and motion, and did not even *mention* any 1993 agreement until the reply brief.  He does not provide a written copy of the agreement or give any details of that agreement or its terms in argument or in an affidavit.  Moreover, for his breach of contract claim, Plaintiff does not rely on any purported 1993 Agreement, but relied solely on the 1980 Agreement.  The record includes a news article stating that a written agreement was entered into in 1993, but the agreement was apparently not acted upon because other artists who worked on the mural did not consent.  **Doc. 17-1.**  The article does not describe the written agreement. Plaintiff has not explained why this agreement, if it exists, is not in the record. In a subsequent news article, Plaintiff backtracked and said that he was not making any alterations but just giving the mural a new coat of paint.  **Doc. 17-2.**  In other words, the 1980 agreement is the only contract in the record and is the only contract Plaintiff relies upon in his complaint and motion.  The Court finds that Plaintiff falls short of showing a substantial likelihood of success on the merits.

In his reply brief Plaintiff also argues that the mural was "redone" in 1993, and therefore his "rights under VARA existed anew as if the Mural was created as of 1993". **Doc. 19 at 4-5.**

10

Defendant argues that Plaintiff simply maintained the mural as contemplated in the 1980 Agreement.  There is nothing in the record explaining what was done to the mural in the 1993 renovation.  He also gives no *on point* case law to support his argument that work performed on a pre-VARA mural would place it under the protection of VARA.

The Court also does not find Plaintiff's argument persuasive because it is contrary to his own statements and admissions.  Plaintiff stated that "the mural exists only in one original form and has continued to exist this way for over forty (40) years." **Doc. 2 at 5.**  Moreover, apparently at the time of the 1993 maintenance, he stated "I'm just giving the mural new coat of paint… I have been ordered by the Property Control Division not to make any alterations as I had planned…" **Doc. 17-2, Ex. 2.**

Plaintiff cites to one case to support his argument that a renovation could give a pre-VARA mural statutory protections. *See Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*, 2005 U.S. Dist. LEXIS 9139, at *13-14 (S.D.N.Y. 2005).  That case does not support Plaintiff's argument, as the district court concluded that VARA did *not* apply because the counter-claimant (the artist-defendant) consented to the installation of the work prior to the effective date of VARA, despite subsequent modifications.

Plaintiff argues that Defendant's conservation assessment acknowledges that a new mural was painted in 1993. *See* **Doc. 16-4 at 9** (Conservation Assessment by Cynthia Lawrence).  The conservation assessment states that "the subsequent maintenance of the mural by Mr. Guzman included partial removal of the original mural, i.e., flaking and damaged paint layers, with Guzman then applying new paint both directly on to the subsurface and existing paint." **Doc. 16-4 at 5.**  Ms. Lawrence opined that "[b]ased on examination, it appears clear that the 1990 work on the Halpin Building was not sufficiently limited in scope to be considered simply a repair, or

11

restoration, of the 1980 mural." **Doc. 16-4 at 9.** This is not inconsistent with Plaintiff's statement that "I'm just giving the mural new coat of paint… I have been ordered by the Property Control Division not to make any alterations as I had planned…" **Doc. 17-2, Ex. 2.** Plaintiff also cited to a report by the Historic Districts Review Board of the City of Santa Fe, which stated summarily that the mural's "current state differs significantly from the original." **Doc. 19-1 at 2.** This report does not describe how the mural's state differs from the original. In other words, Plaintiff has not shown it is likely that alterations were made to the painting so that it was "redone" "as if the Mural was created as of 1993." **Doc. 19 at 4-5**. Rather, the Conservation Assessment is consistent with Plaintiff's statement that he was not permitted to alter the mural and could only apply new paint to the faded mural.

Alternatively, Plaintiff's argument that the mural was "redone" in 1993 and therefore subject to VARA appears to be a red herring. At issue is when Defendant "consented to the installation of the work." § 113(d)(1). The only evidence in the record of Plaintiff's consent to the installation of the work is the 1980 Agreement. Plaintiff continues to rely upon the 1980 agreement in this case. There is no evidence regarding the details or terms of a 1993 agreement in the record. Therefore, the record before the Court reflects that Plaintiff consented to the installation of the work in the 1980 agreement, prior to the effective date of VARA.

### C. Breach of Contract Claim (Count I).

Plaintiff primarily seeks a preliminary injunction based on his VARA claim, but his motion *could* also be interpreted as seeking an injunction on the basis of a breach of contract. Plaintiff's argument is one short paragraph in length. He asserts that the property owner promised "not to alter or paint over the mural during its normal life." **Doc. 2 at 7.** Plaintiff argues that the Court should enjoin Defendant because it allegedly violated the contractual provision that "the property

owner expresses its intent not to alter or paint over the mural during its normal life." **Doc. 16-2 at 1.**

As explained above, Defendant presented evidence that the mural reached the end of its normal life.  Plaintiff did not rebut that evidence with anything in the record.  Therefore, the Court finds that Plaintiff has not shown he is substantially likely to succeed on a breach of this provision.

Plaintiff argues in a reply that the Defendant also breached the contract by failing to allow him to maintain the mural, but this was not a basis for the motion for preliminary injunction.

### III.     Plaintiff has not made a showing that the balance of harms weighs in his favor.

The Court must next consider whether Plaintiff's "threatened injury outweighs the injury the opposing party will suffer under the injunction…" or whether "the balance of equities tips in [Plaintiff's] favor."  *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 889 (10th Cir. 2013) (internal citations and quotation marks omitted).  The third and fourth preliminary injunction factors "merge" when the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).

As explained under the irreparable harm section of this opinion, Plaintiff would likely be harmed by destruction of the mural of because it would violate his "moral rights" under VARA. Even assuming he has these rights under VARA, the degree of harm is lessened here because (1) the mural has reached the end of its natural life; (2) compensatory damages are available; (3) Plaintiff sat on his rights; (4) Plaintiff has stated he would like to redo the mural; and (5) the mural will be exhibited in other forms in the museum.

In contrast, Defendant would suffer a high degree of harm.  Plaintiff requests that construction at the Halpin building cease.  **Doc. 2 at 10.**  As set forth by Defendant in two affidavits, this would cost the Defendant as much as $780,000.  **Doc. 17-5; Doc. 17-4.**  Finally,

13

the Court should also consider that the State of New Mexico has decided the public interest would be served by renovating the building into a museum, and that it is not feasible to preserve the mural in its current form.  **Doc. 16-4.**

Therefore, the Court cannot conclude that the harm suffered by Plaintiff if no injunction is issued *outweighs* the harm Defendant would suffer under an injunction.

### IV.     Bond.

Alternatively, even if Plaintiff prevailed on all preliminary injunction factors, Fed. R. Civ. P. 65(c) requires that prior to the issuance of a preliminary injunction, the Plaintiff post a bond in an amount the Court considers proper.  Fed. R. Civ. P. 65(c) provides:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The Court has "wide discretion… in determining whether to require security." *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (affirming district court ruling, where there appeared to be no harm).  A bond may be "unnecessary to secure a preliminary injunction if there is an absence of proof showing a likelihood of harm." *Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 1462 (10th Cir. 1987); *See also Nokia Corp. v. InterDigital, Inc.,* 645 F.3d 553, 557 (2d Cir. 2011) (noting that the purpose of the bond requirement to "to protect his adversary from loss in the event that future proceedings prove the injunction issued wrongfully") (quotations omitted).

Plaintiff filed this suit after construction on the Halpin building began.  Plaintiff seeks to stop construction on the Halpin building.  **Doc. 2 at 10.**  In support of a bond, Defendant presented the affidavit of Michael A. Harris.  **Doc. 17-4;** *see also* **Doc. 17-5 (Schiavo affidavit).**  The affidavit states that delays in the schedule of construction of the Vladem Contemporary Art

14

Museum would result in increased costs under the Construction Contract of $390,000 to $780,000, depending on the length of the delay and the likely increases to the cost of materials and equipment. **Doc. 17-4 at ¶ 7.** This affidavit is the only evidence in the record of the costs and damages that would be sustained by Defendant if the Court granted this preliminary injunction. The Court finds the affidavit credible. Given the length of civil proceedings, it is likely that a bond of $780,000 would be proper to compensate Defendant for the delay.

Plaintiff has not stated that he could pay a bond of $390,000 to $780,000. He stated he obtained counsel through community donations and any additional funds for a bond would need to be raised through further community efforts. He asks that the Court waive the security requirement because he lacks money and his need for the preliminary injunction is urgent. **Doc. 2 at 9.** Because Plaintiff has not given any indication he can pay a bond of $780,000, the Court could not enter a preliminary injunction in his favor even if one was appropriate.

## CONCLUSION

Preliminary "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S.Ct. 365. Plaintiff has not shown that he is entitled to preliminary injunctive relief here. Therefore, the Court must deny the preliminary injunction motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction **(Doc. 2)** is **DENIED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**